**The People of the State of Illinois, on the Relation of Robert C. Collins, Petitioner-Appellee, v. Loren S. Young, Whiteside County Superintendent of Schools, Defendant-Appellee, and John Torrens, Lee County Superintendent of Schools, Defendant-Appellant.**

Gen. No. 66–79.

Third District.

June 12, 1967.

Rehearing denied July 10, 1967.

Henry S. Dixon, State's Attorney of Lee County, Dixon, Devine, Ray & Morin, of Dixon, for appellant.

Besse, Besse, Frye & Arnold, of Sterling, and L. E. Ellison, State's Attorney of Whiteside County, of Morrison, for appellee.

ALLOY, J.

This is an appeal from an order in a proceeding for a writ of mandamus. The petition alleged that a discrepancy existed in the defining of the boundaries between two school districts, concerning the location of certain lands as being in one or the other, and prayed that the defendants, county superintendents of schools, be commanded to define such boundaries and that the court aid them in determining in which district the disputed lands belong and direct the defendants to define the boundaries accordingly. The order entered in the Circuit Court of Whiteside County directed defendants to consider the territory as being in a designated school district, that is, the Woodlawn District. On appeal in this case, defendant John Torrens, Lee County Superintendent of Schools, contends that since the court itself defined the boundaries it exercised legislative power in violation of the Illinois Constitution; that the order erroneously commanded not the doing of a discretionary act, but the manner in which the act must be performed; that petitioner failed to show a legal right to relief in mandamus; and that the order is not supported by allegations or proofs.

Petitioner-appellee, Robert Collins, and other residents had filed a proceeding to detach certain property from Prairieville Elementary School District No. 200 and attach this property to Woodlawn Elementary School District No. 201. The Petitioners omitted a triangular tract of farmland in the south half of section 18 lying north of the Rock River. The petition was denied since detachment would have isolated this triangular piece. Petitioners thereafter filed a petition for writ of mandamus as against the Superintendents of Schools of both Lee and Whiteside Counties, the two counties involved, respectively. The petition for mandamus alleged that the map obtained from the Superintendents was on such a small scale that petitioners could not determine the

314

true boundary when the detachment action was filed; that petitioners had to refer to tax records to determine the proper boundaries. It was further alleged that the property had been taxed for 95 years in Woodlawn District; that in the map in Lee County the property was shown to be in the Prairieville District while in the map in Whiteside County the property was shown to be in the Woodlawn District. The petition then alleged that it was the duty of the Superintendent of Schools of the two counties involved under section 3–15.7 of the School Code (1965 Ill Rev Stats, c 122, § 3–15.7):

"to act jointly and define the boundaries of the school districts involved which lie in Lee and Whiteside Counties, in conformity with what appears to have been the intention of the Trustees of Schools when such boundaries were established."

The petition alleged that the Superintendents had been requested to define the boundaries but had refused. It was then requested that a mandamus order issue to command the Superintendents, jointly, to define the boundaries; that the court should aid them in determining the intention of the Trustees when the boundaries were established; that the court should conclude from considering the records and the long acquiescence of the Lee County Clerk and the School Boards of Districts No. 200 and 201 that "all of the south half of Section 18 north of the Rock River belongs in the Woodlawn District No. 201." They prayed that defendants should be directed to define the boundaries of the school districts in accordance with this conclusion.

At the hearing it was stipulated by the parties that the territory under consideration "has been considered by the property owners and the tax assessors as being a part of School District 201 as evidenced by the following facts: Since 1871 that land located in the South Half of Section 18 has always been assessed in School Dis-

315

trict 201, Counties of Whiteside and Lee, and its predecessor district or districts, and that none of the South Half of said Section 18 has ever been since 1871 assessed in School District No. 200, Counties of Whiteside and Lee, or its predecessor district, or districts. That since at least 1900, to date, no residents of the South Half of Section 18 have attended school in said Prairieville School District 200, but that in fact all of the residents of the South Half of said Section 18 have in fact insofar as they did attend school, attended Woodlawn School in said School District 201."

The trial court entered an order which recited that the court had considered the stipulation and found, first, that a dispute existed as to the location of the school boundary line between Woodlawn and Prairieville and, secondly, that since 1871 the public officials of both counties have considered the territory was in Woodlawn District. The court by order then concluded that the territory in dispute should be considered by the two Superintendents as being territory located within the boundaries of Woodlawn District and not within Prairieville District.

Appellees in this court point out that long, universal acquiescence on the part of all parties concerned established a "de facto" boundary between the school districts; that the existence of such de facto boundary according to law removed all discretion from defendants in defining the boundary between the districts, thus making their definition of the boundaries a purely ministerial act and subject to mandamus. Appellees point out that the existence of a de facto boundary between the districts meant that there was a mistake in public records, and that by showing this mistake to exist, petitioners established a clear right to relief in mandamus. Appellees assert that the order was based on findings of fact necessarily implied from the allegations and stipulations made by the parties in open court.

In the case of People v. City of LeRoy, 293 Ill 278, 127 NE 695, an attempted annexation to a city failed in 1904 and was in fact void. The subdivider, the city, and everyone involved treated the territory as if it had been annexed to the city. The residents of the territory voted in city elections and paid city taxes. In 1915 the authority of the city over this territory was questioned and in concluding that this territory was part of the City of LeRoy, the Illinois Supreme Court said, at page 284: "No benefit can result from cutting off from the city the territory in question after the many years of peaceful and satisfactory union, universally acquiesced in." The court pointed out that ever since the ineffectual effort to annex, the city has exercised authority over the added territory and year after year levied and collected taxes, and that no voter or public official for more than ten years had deemed it his duty to call in question the city's power.

■ ■ In the case before us for approximately 95 years the Clerk of Lee County has, through the tax assessor and collector, caused taxes to be assessed, levied and collected in the territory in dispute, and the Clerk has given this tax money to the Woodlawn School District. The tax basis for both school districts and the rate levied thereon has been calculated, obviously, on the basis that the disputed territory was within the Woodlawn School District. No voter residing in the school district, nor any inhabitant from the territory, ever made any objection to this procedure. In fact, no resident of the area had ever attended a school in a district other than Woodlawn. It is clear that no benefit can result from cutting off from the Woodlawn School District this territory, after so many years of peaceful and satisfactory inclusion in such district, which was universally acquiesced in by all parties involved. The circumstance that boundaries may not have been originally located in a certain location would nevertheless

317

yield to long acquiescence in boundaries by the parties concerned and such boundaries are treated as the true boundaries by the parties and the courts (People v. City of LeRoy, supra; Ginther v. Duginger, 6 Ill2d 474, 129 NE2d 147, 151).

 It is apparent also that mandamus will lie to prevent a clear abuse of discretion or to control the exercise of discretion in a manner consistent with the applicable rule of law, as an exception to the general rule that mandamus may not be employed to compel public officers having discretionary power to act in a particular way. In Bransfield Co. v. Kingery, 283 Ill App 405, the petitioner sought mandamus to compel officials of the Department of Public Works to approve highway contracts awarded to the petitioner by the Board of County Commissioners of Cook County. It was argued there that the duty of the Department was discretionary and the rejected bidder had no remedy in mandamus. The court concluded that mandamus would lie and stated at page 411:

> "We believe that mandamus will not lie to control the exercise of a discretion where there is room for an honest difference of opinion but that it will lie to prevent a clear abuse of discretion or to control a discretion exercised contrary to an applicable rule of law. Where there has been an unlawful denial of a clear duty on the part of a public official, the citizens to whom such right or duty is owing may secure its performance by writ of mandamus."

The court in that case quoted from Illinois State Board of Dental Examiners v. People ex rel. Cooper, 123 Ill 227, 13 NE 201, where the court pointed out that if a discretionary power is exercised with manifest injustice, the courts are not precluded from commanding its due exercise.

■ In the case before us, what the trial court has done is to direct that the Superintendents fix the boundary in a particular manner which, on the record, was the only legal manner in which the boundary could be determined. This was an appropriate exercise of the mandamus power of the court where the clear result should be to include the triangular piece of disputed territory in the Woodlawn District.

Appellant had also contended in this court that the argument of the appellees with regard to the "de facto" character of the boundary was a new issue not presented to the trial court. While the exact phrase may not have appeared in any petition or motion before the trial judge, the basic concept was in fact presented to the trial judge and his conclusion followed the same line of reasoning. Whether we call it a "de facto boundary" or "boundary by acquiescence," the result is the same.

If the trial court had simply directed the Superintendents to fix the boundary and they had come in with a decision finding the territory to be in Prairieville, the trial judge would have had authority to issue a writ of mandamus to compel them to exercise their discretion in accordance with the applicable law and to place the property in the Woodlawn District. This is in effect what the court has done in the cause before us and we agree that the order of the trial court was proper and should be affirmed.

Affirmed.

STOUDER, P. J. and CORYN, J., concur.