BYRON L. KERMEEN, Plaintiff-Appellee, v. THE CITY OF PEORIA et al., Defendants-Appellants.

Third District   No. 77-416

Opinion filed November 21, 1978.—Rehearing denied December 22, 1978.

STOUDER, J., dissenting.

Brian M. Nemenoff, of Peoria, for appellants.

Arthur G. Greenberg, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

In this proceeding the Circuit Court of Peoria County issued a writ of mandamus to compel the city of Peoria and certain city officials to issue a site approval and a building permit for a proposed apartment building project, and the city appeals.

According to the record, in 1972 plaintiff Byron L. Kermeen purchased 8½ acres of real estate in an area of Peoria zoned for medium density residential use (R-2). Before making the purchase plaintiff checked to see

that no plats, dedications, or encumbrances were a matter of public record. After ascertaining that the site could be used for apartment building purposes, plaintiff purchased the property, had engineering proposals prepared, negotiated with various city officials, and finally· in 1975 submitted building and site plans to the city for an apartment building consisting of 108 living units. The plans were rejected, and the only reason stated in the rejection letter was ˙that plaintiff "failed to provide the 65 feet of right-of-way needed for the extension of Imperial Drive," a street intended as a collector street for neighborhood traffic.

In order to construct a connecting street between the two existing segments of Imperial Drive, the city wanted plaintiff to leave vacant a 65-foot-wide strip of land the full length of the tract. At trial witnesses on behalf of the city attempted to testify that the city is planning to extend Imperial Drive through this property, but the trial court sustained plaintiff's objections to all such testimony because the city has not included an extension of Imperial Drive on the master traffic plan adopted by the city council. Evidence pertaining to other defects in plaintiff's plans was also excluded as irrelevant. Judgment was entered for plaintiff, and the city perfected this appeal.

The city's primary contention is that a writ of mandamus was improperly issued because the question of site plan approval is a matter of judgment and discretion which cannot be reviewed by mandamus. The city also argues that future traffic needs are appropriate considerations in the site review process regardless of incorporation in a traffic plan ordinance. After carefully reviewing the record, we conclude that the trial court acted properly in ordering the city to issue the required permits to plaintiff.

■■ ■ Mandamus is an extraordinary remedy which will lie only where the party seeking the writ can show a clear legal right to the relief requested. Since mandamus commands the official to whom it is directed to perform some specific duty which plaintiff is legally entitled to have performed and which the official has failed to perform, it follows that where performance of a duty or act involves the exercise of judgment or discretion, the officer's action is not ordinarily subject to review or control by mandamus. (*People ex rel. Rappaport v. Drazek* (1st Dist. 1975), 30 Ill. App. 3d 310, 332 N.E.2d 532.) The general rule that mandamus will not issue to direct the performance of a discretionary act has been applied to bar the writ where a police officer had been refused reinstatement (*People ex rel. Elmore v. Allman* (1943), 382 Ill. 156, 46 N.E.2d 974); where a doctor licensed in Ohio was denied an Illinois license on the basis of reciprocity (*People ex rel. Goldfarb v. White* (1st Dist. 1964), 54 Ill. App. 2d 483, 203 N.E.2d 599); and where an accountant under civil service did not receive a promotion (*People ex rel. Rappaport v.*

*Drazek* (1st Dist. 1975), 30 Ill. App. 3d 310, 332 N.E.2d 532). In each of these cases the reviewing court found an express grant of discretionary power to the public official or administrative agency, and in each case the court refused to direct how the discretion should be exercised.

That, however, is not the end of the matter. If a discretionary power is exercised with manifest injustice or if a palpable abuse of discretion is clearly shown, mandamus will issue. As was stated in *Illinois State Board of Dental Examiners v. People ex rel. Cooper* (1887), 123 Ill. 227, 241, 13 N.E. 201:

> "A public officer * * * may be guilty of so gross an abuse of discretion or such an evasion of positive duty, as to amount to a virtual refusal to perform the duty enjoined, or to act at all in contemplation of law; in such a case *mandamus* will afford a remedy."

In *People ex rel. Collins v. Young* (3d Dist. 1967), 83 Ill. App. 2d 312, 227 N.E.2d 524, when a parcel of farm land was claimed by two different school districts, a petition for writ of mandamus was filed to compel the respective county superintendents of school to define the boundaries of the two districts. The order entered by the trial court found that the disputed territory was located in Woodlawn District. The appellate court affirmed, and speaking through Justice Alloy, stated:

> "It is apparent also that mandamus will lie to prevent a clear abuse of discretion or to control the exercise of discretion in a manner consistent with the applicable rule of law, as an exception to the general rule that mandamus may not be employed to compel public officers having discretionary power to act in a particular way." (83 Ill. App. 2d 312, 318.)

The court then discussed the case of *John M. Bransfield Co. v. Kingery* (1936), 283 Ill. App. 405, where mandamus was issued to compel officials of the Department of Public Works to approve highway construction contracts awarded by the Cook County Board of County Commissioners. In both *Bransfield* and *Collins* the court concluded that mandamus could be used to direct performance of a discretionary act when necessary to prevent a manifest injustice.

The same rule was applied to compel issuance of driveway permits in *People ex rel. Shell Oil Co. v. City of Chicago* (1st Dist. 1972), 9 Ill. App. 3d 242, 292 N.E.2d 84, where Shell was refused the permits because an alderman strenuously objected. Since there was no evidence that Shell had failed to comply with any of the requirements of the ordinance regulating such permits, the court found that the failure to issue the permits was an arbitrary abuse of discretion which could be corrected by mandamus.

■ The case at bar closely resembles the *Shell* case. Here plaintiff

invested substantial sums of money to purchase the land and prepare plans for construction of a large apartment complex at a location zoned for such a project, only to be refused a permit because the plans did not allow for a possible street improvement which was contemplated but which had not been formally adopted and which was not included on traffic planning maps. From the record we think the prospective extension of Imperial Drive was a purely speculative matter, and until some official action was taken, a building permit could not be denied because of the mere possibility of future street needs. Plaintiff made a substantial change in position in reliance upon the probable issuance of a building permit and thus had a vested right to use his property in a lawful manner, as proposed. *Cf. People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, 157 N.E.2d 33.

■ While anticipated traffic needs are obviously an appropriate consideration in planning for the future development of the vacant areas of a city, proposed streets must have some official sanction and be a matter of public record before they can be the basis for refusing building permits. The result in this case would obviously be different if plaintiff were proposing to develop a subdivison. Peoria's subdivision ordinance allows the city to require construction of specific streets as a condition of subdivision approval, but the city has not such authority in dealing with applications for building permits. As the trial court stated, if the city wants plaintiff's property for streets, condemnation is the correct remedy. Consequently we believe mandamus was properly issued in this cause.

■ The city additionally contends that the trial court erred in excluding evidence that plaintiff's plans were also defective for failing to meet certain drainage and fire protection standards. Plaintiff was not given notice of any such deficiencies in the letter rejecting his application, and these matters were not pleaded as affirmative defenses in this cause. Hence, the ruling of the trial court was correct. The rights of the parties are determined according to the facts and circumstances existing at the time the action was begun, and any facts constituting a defense must be plainly set forth in the answer. *People ex rel. Shell Oil Co. v. City of Chicago* (1st Dist. 1972), 9 Ill. App. 3d 242, 292 N.E.2d 84.

The dissenting opinion claims that plaintiff failed to plead or prove that a site approval was required by ordinance but we believe that issue was waived because it was not raised either here or in the trial court. The dissent also suggests that the map of the city's master traffic plan indicates that Imperial Drive is to be completed by a segment across plaintiff's property, but we view the map as indicating that several different routes are available for the connection of two portions of Imperial Drive and in fact, plaintiff's property is not directly between the two existing segments. Finally we reiterate that the City's fire hazard defense came too late when

it failed to plead or otherwise give notice to plaintiff of fire protection problems until the morning of trial.

For the reasons stated, we affirm the judgment of the Circuit Court of Peoria County.

Affirmed.

SCOTT, J., concurs.

Mr. JUSTICE STOUDER, dissenting:

I must respectfully dissent from the opinion of my colleagues. I neither agree with the majority's opinion that the plaintiff was clearly entitled to the relief sought or that the trial court acted properly in excluding certain evidence of inadequacies in the proposed building plans.

The petition in question does not set forth any ordinance relating to site approval. In requesting the relief of mandamus, the plaintiff asserts full compliance with all ordinances, and he therefore has a clear and unequivocal right to site approval and a building permit. If plaintiff is claiming full compliance with ordinances, I think it is incumbent upon him to set forth those ordinances in his petition. Where plaintiff seeks issuance of a permit, the plaintiff must show complete compliance with the ordinances before the writ will issue. (*Solomon v. City of Evanston,* 29 Ill. App. 3d 782, 331 N.E.2d 380.) Nowhere in the record do the ordinances involved appear. Without knowing the provisions of the relevant ordinances, how can the plaintiff's compliance with those ordinances be rationally ascertained. Furthermore, while the parties argue that site approval was necessary and the city board has some degree of discretion, the extent of the board's discretion and the matters which are properly subject to that discretion can only be ascertained by reference to the appropriate ordinances. I believe that plaintiff's failure to plead or prove the ordinance under which he was requesting relief is fatal to his claim. The opinion of the majority makes no reference to any ordinance which has been complied with by the plaintiff and also fails to refer to any reasons why the plaintiff is entitled to "site approval."

So far as the question of an official designation of the proposed roadway is concerned, the master traffic plan adopted by the city council does indicate an Imperial Drive at or near two of the edges of plaintiff's property. From the manner in which the ends of the existing roads are shown, the unfinished ends of the drive were to be linked together by a segment across plaintiff's property. The full intersection for Imperial and a cross street (Terra Vista Dr.) at the western edge of plaintiff's property has already been constructed with the city of Peoria contributing substantial sums of money toward construction costs. The plaintiff's plans

presently under consideration will utilize the unfinished extension of Imperial Drive through the intersection as the sole means of access to a parking lot for the apartment building.

The decision of the majority is initially predicated on the absence of any designations of Imperial Drive on any official map sufficient to charge plaintiff with notice of the planned drive. However, later in its opinion, the majority concedes the map does show the ends of Imperial Drive apart from the extension thereof and the area which would be crossed by connecting the segments of Imperial Drive. Although conceding there is a map showing the segments of Imperial Drive to be connected and extended, the majority argues it is not necessary to route the connecting link across plaintiff's property, but rather alternative routes are available. Not only is the majority's position inconsistent, the alternative routes are not available and not even the plaintiff made any such argument.

In stating that several different routes are available to connect the two portions of Imperial Drive, the majority acknowledges that Imperial Drive is already partially completed and that the two unfinished ends of the existing pavement were to be connected. While minor deviations in routing the proposed connecting segment are possible, the majority is incorrect in stating that plaintiff's property is not directly between the two existing segments. Examination of plaintiff's exhibits B and C indicates that the existing pavement of Imperial Drive passed the intersection of Imperial and Terra Vista Drive abuts the western edge of plaintiff's property. Since the pavement abutting the western edge of plaintiff's property can only be connected with the other end of Imperial Drive by proceeding in an easterly direction across plaintiff's property, I fail to comprehend the basis for the majority's statement that plaintiff's property is not directly between the two existing segments.

From the map of the master traffic plan and the testimony of the city, the method of designating minor roadways known as "collector streets" (such as Imperial Drive) was for the purpose of permitting property owners some discretion in the location of the road in developing their property. This conclusion is bolstered by the fact that for several years prior to his present plan, plaintiff knew of the city's plan and intention that at some time a drive would be constructed as part of the overall development of the area.

Nor can I agree with my colleagues that the trial court acted properly in preventing the defendants from introducing evidence that the building proposed by plaintiff contained certain fire hazards. The principles of estoppel against municipalities in matters relating to the public health, safety and welfare are well stated in *Hickey v. Illinois Central R.R. Co.*, 35 Ill. 2d 427, 448-49, 220 N.E.2d 415, 426.

" 'While situations may arise which justify invoking the doctrine of

estoppel even against the State when acting in its governmental capacity, (citation) we have always adhered to the rule that mere nonaction of governmental officers is not sufficient to work an estoppel and that before the doctrine can be invoked against the State or a municipality there must have been some positive acts by the officials which may have induced the action of the adverse party under circumstances where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had previously done. [Citations.] In applying the doctrine of estoppel, the courts will not decide the question by mere lapse of time but by all the circumstances of the case, and will hold the public estopped or not as right or justice may require. [Citations.] The doctrine is invoked only to prevent fraud and injustice'."

The rationale of such a rule is rooted in the concept that valuable public interests may be jeopardized or lost by the negligence, mistakes or inattention of public officials. (*United States v. California*, 332 U.S. 19, 91 L. Ed. 1889, 67 S. Ct. 1658.) Certainly, there can be few interests greater than the safety of the public. Here the defendants by way of various offers of proof attempted to establish that a single 2½-story structure of over 900 feet in length, which had access for fire equipment (via a parking lot) on only one side, presented serious fire hazards and jeopardized the safety of the occupants. The building in question has apartments on one side facing the parking lot and apartments on the other side facing a green area. It appears from the testimony and offers of proof that the only access to fighting a fire in the apartments facing the green area was by dragging hoses over the roof, through hallways which contained stairways, or a considerable distance from ends of the building. I believe such concerns were legitimate ones and should have been considered by the trial court.

Examination of cases reveals that equitable estoppel generally arises in situations where a party expends substantial sums in reliance on an invalid building permit and the city then attempts to revoke the invalid permit. An estoppel may also arise when the city attempts to revoke a valid permit because of changes in zoning. (See *Deer Park Civil Association v. City of Chicago*, 347 Ill. App. 346, 106 N.E.2d 823.) Only if the party to whom the permit was issued has been actively misled by city officials will an estoppel arise. (*Excellent Builders, Inc. v. Pioneer Trust & Savings Bank*, 15 Ill. App. 3d 832, 305 N.E.2d 273.) Estoppel will lie against a municipality in a matter of the exercise of its governmental functions only in extraordinary circumstances. (*Solomon v. City of Evanston*, 29 Ill. App. 3d 782, 331 N.E.2d 380.) I submit that in the present case circumstances do not warrant applying the doctrine of estoppel, especially where lives may be jeopardized by its application.

It is apparent from the record that the trial judge was irritated with the city for their lack of preparation for trial. While I share the trial court's disapproval of the city's conduct, such disapproval was not an appropriate reason for excluding and ignoring the city's objections to the proposed plans.

The majority relies on *People ex rel. Shell Oil Co. v. City of Chicago*, 9 Ill. App. 3d 242, 292 N.E.2d 84. I would note that in *Shell Oil*, the defendants were allowed to introduce trial testimony and a report that one driveway of the proposed gas station could prove a potential hazard to children crossing the street, but the trial court apparently accorded such evidence little weight in issuing the writ of mandamus. In light of such facts, subsequent statements by the court are of questionable authority. Even assuming the validity of such statements in *Shell Oil* in light of these facts, here, defendant's answer denied petitioner's assertion that the proposed building plans were legal and proper. I believe that such a denial entitled defendant to show any manner in which the plans were not legal or proper. Furthermore, the defendants attempted to show that the fire objections were not originally made because until defendant's objections to the lack of space for a proposed road were resolved, the placement and/or number of buildings was speculative. Since resolution of the preliminary objection on the road might affect other matters of inquiry, such as fire hazards, the defendants properly refrained from examining the plans in full until a trial on the plans in their entirety appeared imminent. In summary I believe petitioner failed to establish a clear and undeniable right to a building permit and site approval, and the trial court erred in failing to allow defendants to admit evidence that the proposed building contained fire hazards.