THE PEOPLE *ex rel.* PPG INDUSTRIES, INC., Petitioner-Appellee, *v.* REBECCA SCHNEIDERMAN, Chairman, *et al.*, Respondents-Appellants.—(DANIEL McNAMARA, Intervenor.)

Fourth District   No. 16463

Opinion filed January 7, 1980.

MILLS, J., dissenting.

Tyrone C. Fahner, Attorney General, of Springfield (A. L. Zimmer, Assistant Attorney General, of counsel), for appellants.

Jon D. Robinson, of Hull, Campbell, Robinson & Gibson, of Decatur, for appellee PPG Industries, Inc.

James S. Serkland and Stephen M. Cornelius, both of Scheele, Serkland & Boyle, Ltd., of Chicago, for intervenor Daniel McNamara.

Mr. JUSTICE GREEN delivered the opinion of the court:

This appeal is from an order of the circuit court of Macon County granting issuance of a writ of *mandamus* ordering the Industrial Com-

mission, acting pursuant to section 23 of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.23) to approve a settlement contract entered into by relator, PPG Industries, Inc., an employer, and intervenor, Daniel McNamara, its injured employee. We reverse, holding the writ to have been improperly ordered.

Relator filed the petition for issuance of the writ on April 11, 1980, naming the various commissioners of the Industrial Commission as respondents. The petition asserted that approval of the settlement was a ministerial act which the Commission was required to perform but had refused to do by its order of January 8, 1980. After having held a hearing on the request for the writ, the circuit court entered an order on June 19, 1980, finding approval of the settlement to have been in the best interests of the intervenor-employee and ordering the writ to issue. The ruling was apparently based upon a theory that the Commission's refusal to approve the settlement constituted a breach of discretion working a manifest injustice.

Respondents appeal, asserting *mandamus* not to have been a proper remedy because: (1) no duty of the Commission to approve the settlement had been previously determined; and (2) the Commission had discretion in ruling upon the request for approval of the settlement and that discretion had not been abused in a way that brought about a manifest injustice.

Before considering directly the contentions of the parties, we must decide the rather complicated question of whether we have jurisdiction. Pursuant to its power under article VI, section 4(b) of the Illinois Constitution of 1970, the supreme court has promulgated its Rule 302(a) (73 Ill. 2d R. 302(a)) which states in part: "Appeals from final judgments of circuit courts shall be taken directly to the Supreme Court * * * (2) in proceedings to review orders of the Industrial Commission." The instant order of the circuit court ordering issuance of the writ to compel approval of the settlement was clearly a final order. We must determine whether it was entered in a proceeding "to review" an order of the Commission. If so, only the supreme court would have jurisdiction.

Article VI, section 9, of the Illinois Constitution of 1970 states: "Circuit Courts shall have such power to review administrative action as provided by law." Section 19(f)(1) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.19(f)(1)) states that the appropriate circuit court "shall by writ of certiorari to the [Industrial] Commission have power to review all questions of law and fact presented by" a record made pursuant to section 19 which provides for the determination of disputed questions of fact between parties to a proceeding for adjustment of claim. Claims against the State of Illinois are excepted from the fore-

going *certiorari* proceeding. Although section 19 is designated as a procedure for dealing with disputed questions of fact, in *Corn Belt Motor Co. v. Industrial Com.* (1945), 389 Ill. 320, 59 N.E.2d 652, the *certiorari* procedure described reached the question of the Commission's refusal to approve a settlement contract to pay a widow the amount of compensation accrued to her claimant-husband at the time of his death.

■■ In some States, *mandamus* is considered to be an appropriate method of administrative review. (52 Am. Jur. 2d *Mandamus* §162, at 485 (1970).) Here, the practice in *mandamus* proceedings is set forth by statute (Ill. Rev. Stat. 1979, ch. 87, par. 1 *et seq.*), but the legislation makes no reference to the substantive requirements for issuance of the writ. Thus, the legislature has not "provided by law" for the use of *mandamus* "to review orders of the Industrial Commission." As we discuss in more detail later, the writ has been held to lie against administrative agencies to prevent their abuse of their discretionary power when the abuse results in manifest injustice. (*Illinois State Board of Dental Examiners v. People ex rel. Cooper* (1887), 123 Ill. 227, 13 N.E. 201; *Kermeen v. City of Peoria* (1978), 65 Ill. App. 3d 969, 382 N.E.2d 1374; *People ex rel. Shell Oil Co. v. City of Chicago* (1972), 9 Ill. App. 3d 242, 292 N.E.2d 84.) In this case the writ was ordered to issue upon similar grounds. In the broad sense the writ could be said to have been used to review the actions of the Commission. However, in view of the history of the use of *mandamus* in this State and the constitutional provisions for administrative review, we conclude that a proceeding in the circuit court to obtain a writ of *mandamus* to order the Industrial Commission to approve a settlement is not a "proceeding to review" that order within the meaning of Rule 302(a). If it was, the circuit court would not have had jurisdiction because *certiorari* is the only method of administrative review to the circuit court "provided by law" for orders of the Industrial Commission.

Accordingly, we conclude that we have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution of 1970, which gives us jurisdiction on appeal of all circuit court civil orders final as to an entire case when those orders are not appealable directly to the supreme court.

We now turn to the merits of the appeal. We hold that the Commission (1) was not required to approve the settlement as a ministerial act; and (2) in refusing the settlement did not abuse its discretion in such a way as to work an injustice. Accordingly, we need not consider other issues.

The theory of relator and intervenor that approval was a ministerial act required of the Commission is based upon the relationship of section 23 of the Act and sections 9, 18, and 19 thereof. (Ill. Rev. Stat. 1979, ch. 48, pars. 138.9, 138.18, 138.19.) Section 9 provides for a proceeding whereby a claimant receiving an award of periodic compensation payments may

seek Commission approval for commutation of the award to one for a lump sum. The section conditions Commission approval upon a finding by the Commission that commutation is in the best interests of the parties. Under the theory, the lack of any requirement in section 23 for the Commission to make a determination of best interests indicates that the Commission has no discretion in section 23 proceedings. Sections 18 and 19 speak in terms of the Commission making a determination upon a claim only if the parties cannot agree. Under the theory, as long as the parties are in agreement, the Commission could make no determination upon a claim. Thus, if a section 23 settlement request were not approved, the claim could never be determined. The theory envisions the function of the section 23 proceeding to be for the Commission to make sure that the claimant understands the settlement and to admonish the claimant as to its pitfalls but to approve the settlement once it is explained to the claimant as long as the claimant persists in desiring approval after admonishment.

■■ Although the statutory wording cited by relator gives some color to its claim, we are unconvinced that section 23 gives no discretion to the Commission in deciding whether to approve settlements. Had the legislature wished for the Commission merely to admonish the claimant, it would have so stated directly. We conclude that the Commission has the power and responsibility to refuse approval of a settlement under section 23 in the face of persistent requests by the parties that the settlement be approved. Approval of the settlement here was not a required ministerial act of the Commission.

The claim that the Commission had abused its discretion was based upon a transcript of the Commission hearing on the request for settlement approval. The transcript was admitted into evidence in the hearing on the request for *mandamus* and was apparently the only evidence presented.

Intervenor McNamara was shown to have twice received injuries arising in the course of and out of his employment with relator. He had been granted an award for total permanent disability by an arbitrator. Relator had taken review from this award to the Commission at the time the parties reached the instant proposed settlement. By the total agreement, intervenor was to be paid $65,000 in lump sum by relator and was to receive the same group health insurance and other benefits that he would have received had he remained an employee. His pension rights were to become vested. The transcript also indicated some uncertainty as to whether the award would stand up on review. Intervenor had not received any treatment for two years prior to the award and his treating physician had released him for work.

The transcript also indicated that if intervenor lived out his life expectancy to age 73, and the award held up, he would receive total

payments in excess of $300,000 or about $8,700 per year, all income tax free. Intervenor had testified that he had several small children, one of whom was asthmatic, and that he did not know how he would invest the lump sum that he would receive under the settlement.

One of the two commissioners holding the hearing on the settlement indicated misgivings about the effect upon the Federal Social Security System that would result from approval of the settlement. Apparently intervenor's social security payments would be reduced if he received periodic workers' compensation payments, but a lump sum settlement would not give rise to a reduction in those payments. The commissioner questioned the social policy of approving a settlement so structured to shift the financial responsibility of caring for the injured employee from the employer to the tax-supported Federal social security funds.

Relator and intervenor maintain that intervenor's likely recovery of over $8700 per year reduced to present value using an interest rate of 10% per annum would be slightly over $80,000. They argue that when the additional benefits are added in and the uncertainty of the existing award is considered, the settlement is clearly in intervenor's best interests. They argue that the Commission's refusal must have resulted from the one commissioner's spoken distaste for the structure of the settlement viewed from social policy and that the Commission's ruling was thus a gross abuse of discretion working a manifest injustice.

As previously indicated, the theory that *mandamus* lies to require administrative action when to deny it would be an abuse of discretion working a manifest injustice arises from such cases as *State Board of Dental Examiners, Kermeen*, and *People ex rel. Shell Oil Co*. Ordinarily, *mandamus* does not lie to force a public officer or public body to exercise its discretion in a particular way. (*Johnson v. Mini* (1978), 62 Ill. App. 3d 945, 379 N.E.2d 826; *People ex rel. McGrady v. Carmody* (1968), 104 Ill. App. 2d 137, 243 N.E.2d 19.) However, in *Kermeen* a landowner had made a substantial investment in purchasing land and preparing plans for an apartment complex but was refused a building permit by city officials on grounds that the plans interfered with highly speculative city plans to extend a street. Similarly, in *People ex rel. Shell Oil Co*. a city had refused a permit to build a driveway upon the basis that an alderman had objected to issuance of the permit. In both cases an order for issuance of a writ of *mandamus* was affirmed upon the theory that the governmental agency action was so grossly an abuse of discretion that it worked a manifest injustice.

Both of the above opinions cited *People ex rel. Collins v. Young* (1967), 83 Ill. App. 2d 312, 227 N.E.2d 524, where the appellate court affirmed an order for issuance of a writ of *mandamus* to order county

superintendents of schools to draw boundary lines between school districts in such a way as to place a certain tract in a district to which its taxpayers had been paying taxes in good faith for 90 years. *Kermeen* also cited Illinois *State Board of Dental Examiners* where the court likened actions of public officials which were grossly an abuse of discretion to the failure of officials to perform acts which require discretion. When the latter occurs, *mandamus* clearly lies. *People ex rel. McGrady*.

■■ The tenor of the foregoing cases is that use of *mandamus* to require the performance of a discretionary governmental act should be extremely rare. The situation here is not at all comparable to those cases. The monetary value of the award as compared to the lump sum settlement was close. The Commission was in a far better position than the courts to judge the uncertainty of the award or the need that intervenor and his family might have for the payments to be periodic. The interest rate used to reduce the likely periodic payments to present value was somewhat speculative when applied on a long term basis. The propriety of basing disapproval of a settlement upon desirable public policy as against the best financial interests of a claimant presents an interesting question. But we need not decide it here because we do not know that the Commission ruling was in any way based upon that consideration. We do not find the Commission's refusal to approve the settlement to be an abuse of discretion working a manifest injustice.

Our reversal of the order for issuance of the writ is for the reasons stated.

Reversed.

CRAVEN, J., concurs.


Mr. JUSTICE MILLS, dissenting:
I must dissent.

I simply cannot agree with the majority's interpretation of our jurisdiction to hear this appeal. In my view, it belongs across the hall in the supreme court.

This case—although couched in terms of *mandamus* and beclouded in all the mystique of extraordinary writs—is still nothing more than a proceeding "to review orders of the Industrial Commission."

The majority is driving the wrong way on a one way street. The taproot of this case, below as well as here, is sunk squarely in the Commission's refusal to approve a workers' compensation settlement. And it is clearly a proceeding to review the Commission's action.

For this court to meddle in the review of Industrial Commission orders flies directly in the face of both the 1970 Illinois Constitution and a rule of our supreme court.

This appeal should be transferred to the Supreme Court of Illinois.