Bernard SCHROEDER,
Plaintiff–Appellant,

v.

CITY OF CHICAGO, John J. Tully,
and Audley Connor,
Defendants–Appellees.

No. 90–1144.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 7, 1990.

Decided March 13, 1991.

J. Peter Dowd, Janet B. Johnson–Vinion, Dowd & Bloch, Chicago, Ill., for plaintiff-appellant.

L. Anita Richardson, Corp. Counsel, Jean Dobrer, Asst. Corp. Counsel, Laura Hutchinson, Kelly R. Welsh, Asst. Corp. Counsel, Office of the Corp. Counsel, Appeals Div., Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and POSNER and RIPPLE, Circuit Judges.

POSNER, Circuit Judge.

This is a suit under the ubiquitous 42 U.S.C. § 1983 by a former employee of the Chicago fire department who is complaining about delay in the receipt of disability benefits. The suit was dismissed for failure to state a claim, so we are confined to the facts stated in the complaint. On October 23, 1985, Bernard Schroeder was injured while fighting a fire. He was placed on medical leave at full pay and remained in that status for more than a year, during which time he was examined by a number of doctors all of whom concluded that he would be unable to resume his duties as a fireman. On November 16, 1986, the fire department stopped paying him and the next month he applied to the Retirement Board of the Fireman's Annuity and Benefit Fund of Chicago—a public agency separate from the City of Chicago, Ill.Rev.Stat. ch. 108½, ¶ 22–402—for permanent "duty disability" benefits, that is, benefits for a disability incurred in the line of duty.

The complaint states that the law of Illinois prohibits the Retirement Board from acting on an application for benefits until it receives a medical certificate from the fire department indicating the reason why the fireman has been struck off the department's payroll. The defendants counter that the statute expressly gives the Board "exclusive original jurisdiction" over all claims for benefits, Ill.Rev.Stat. ch. 108½, ¶ 6–185, and further provides that the necessary proof of a duty disability is to be furnished to the Board by a physician appointed by it. ¶ 6–153. The Board can require additional evidence of disability, *id.*, but is under no duty to do so—certainly no duty to await a medical certification from the fire department. To this Schroeder ripostes that an earlier paragraph of the statute provides that "whenever an active fireman is or becomes so injured or sick, as to require medical or hospital attention, the chief officer of the fire department of the city shall file, or cause to be filed, with the [Retirement Board] a report of the nature and cause of his disability, together with the certificate or report of the physician attending or treating.... Any injury ... for which a physician's report or copy of the hospital record is not on file with the board shall not be considered for the payment of duty disability benefits." ¶ 6–151. So maybe the submission of a medical report or certificate by the fire department is a condition precedent to the Board's "exclusive original jurisdiction" attaching. And whether it is or not, the Board customarily asks the fire department for a medical certificate (so at least the complaint alleges); it did here. It got no response, and in consequence did not process Schroeder's application. Eventually he demanded a hearing before the Board. It was held on August 19, 1987, eight months after he had applied for benefits. At the hearing it was revealed that John Tully, the fire department's director of personnel, and Audley Connor, its medical director, had refused to furnish the medical certificate because they believed that the real reason for Schroeder's inability to work was alcoholism rather than any work-related injury. The complaint says that

they knew better, and in fact were acting maliciously. However this may be, the Board disagreed with the opinion of Tully and Connor and either at the conclusion of the hearing or directly afterward awarded Schroeder duty disability benefits retroactive to the date on which he had applied for them. It did this even though the fire department never did furnish the medical certificate that Schroeder contends is a condition precedent to an award of benefits. If in doing this the Board violated the law, it violated it in Schroeder's favor and he can't complain.

■ One might have thought that a full retroactive award of benefits would have ended any dispute between Schroeder and the Chicago fire department. Not so. Schroeder complains that during the eight months in which his application for disability benefits was in limbo he had no money to live on and as a result both suffered emotional injury—including a fall off the wagon after what he contends was a ten-year period of sobriety (Tully and Connor may have a different view on this matter)—and incurred legal expenses to obtain the benefits. He attributes the Board's delay and the resulting injury and expense to him to the willful and malicious conduct of Tully and Connor in withholding the vital medical certificate from the Retirement Board, conduct which he claims deprived him of property without due process of law. The complaint joins the City of Chicago, Tully's and Connor's employer, as an additional defendant, but this joinder is frivolous. The isolated misconduct of two employees in refusing to furnish a certificate to another agency is precisely the type of random and unauthorized act which, even if deliberate, is not deemed the act of their municipal employer. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988).

■ The claim against Tully and Connor is more substantial but faces two steep hurdles. The first is the requirement that the plaintiff show a deprivation of property, the second that he show a denial of due process. A disability benefit that is a matter of right, not of grace, is a property

right within the meaning of the due process clause. But in what sense was Schroeder deprived of his benefit? He received it in full, only some months later than he applied. If he received it after he was *entitled* to receive it, then he was deprived of an entitlement, and entitlements are what the due process clause has been held to protect in the name of "property." *Patterson v. Portch*, 853 F.2d 1399, 1405 (7th Cir.1988); *Fleury v. Clayton*, 847 F.2d 1229, 1231 (7th Cir.1988). If you are entitled to receive $1,000 on May 1, 1989, and you receive it on May 2, you have been deprived of an entitlement. It is a limited, temporary, and easily reparable deprivation—the loss, in effect, of a day's interest on $1,000, which is less than a dollar. But it is a deprivation nevertheless, and we may assume that it would be actionable. *Tavarez v. O'Malley*, 826 F.2d 671, 674 (7th Cir.1987); *Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir.1982). But Schroeder points to no source in positive law for an entitlement to be awarded a fireman's disability benefit on the day he applies, or on the following day, or within a month, or a year. If there is unreasonable delay the applicant can seek a writ of mandamus from an Illinois state court. *People ex rel. Ulrich v. Board of Trustees*, 344 Ill.App. 210, 100 N.E.2d 815 (1951) (abstract); cf. *Kermeen v. City of Peoria*, 65 Ill.App.3d 969, 22 Ill.Dec. 619, 382 N.E.2d 1374 (1978). But that is different from a substantive entitlement to begin receiving money within a fixed interval of the application. Probably the draftsmen of the statute assumed that between the provision for making awards retroactive and the right of an applicant to seek mandamus in an extreme case, unreasonable hardship resulting from delays in the processing of pension and disability claims would be minimized. In any event they decided not to create a legally enforceable right, an entitlement, to immediate payment, and the consequence is that a delay in the payment of Schroeder's disability benefit did not deprive him of a property right in the Fourteenth Amendment sense.

■ Justice delayed is justice denied, the saying goes; and at some point delay must ripen into deprivation, because otherwise a suit alleging deprivation would be forever premature. The distinction is explained in *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir.1989), which considered delays of six months and even nineteen months in the processing of a claim for social security benefits unremarkable, while citing with approval a case that had held a delay of almost four years in acting upon a request for an annuity to be a deprivation of property. *Kelly v. Railroad Retirement Bd.*, 625 F.2d 486, 490 (3d Cir.1980). *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which held that a hearing on whether to restore social security disability benefits that have been terminated can be held after termination, condoned a delay of more than a year, on average, in the restoration of benefits wrongfully terminated. *Id.* at 342, 96 S.Ct. at 906. Cf. *Heckler v. Day*, 467 U.S. 104, 118, 104 S.Ct. 2249, 2257, 81 L.Ed.2d 88 (1984). If there is irreparable harm from delay, then delay injures, and by injuring deprives. But a loss of the time value of money, consequent on delay in receiving money to which one is entitled, is not considered an irreparable harm, even though it is a real loss, and even if there is no way to recover it. Cf. *Proimos v. Fair Automotive Repair, Inc.*, 808 F.2d 1273, 1277 (7th Cir.1987); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir.1984).

The cases on unreasonable delay are best understood as holding that implicit in the conferral of an entitlement is a further entitlement, to receive the entitlement within a reasonable time. The fact that mandamus might lie under Illinois law to rectify egregious stalling tactics suggests that such a further entitlement may be implicit in that law. This we need not decide. The delay was not sufficiently egregious in this case to deprive Schroeder of this additional, implicit entitlement, assuming he had such a thing.

■ Another interpretation of these cases is that deadlines for action on applications for benefits define what process is due. *Wright v. Califano*, 587 F.2d 345, 354–56 (7th Cir.1978); *Givens v. United States Railroad Retirement Bd.*, 720 F.2d 196, 201 (D.C.Cir.1983). The difficulty with this approach is that it leaves the anterior question whether there was a deprivation hanging in the air. Without a deprivation, the issue of due process does not arise. *Olim v. Wakinekona*, 461 U.S. 238, 250–51, 103 S.Ct. 1741, 1748–49, 75 L.Ed.2d 813 (1983); *Cleveland Bd. of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). But however the matter is approached, Schroeder must lose because there was no deadline for the Retirement Board to act on his application.

■ This is not the only reason there was no denial of due process, at least in the procedural sense of the term. Supposing that Tully and Connor did maliciously and unjustifiably withhold a certificate that would have speeded up the Board's consideration of Schroeder's application, what has that to do with Schroeder's procedural rights? Procedural due process so far as relevant to his case must refer to the procedure used by the Board in processing Schroeder's application. That procedure satisfied the requirements of the Constitution. The hearing before the Board was unaffected by Tully's and Connor's machinations (unlike the situation in *Tavarez v. O'Malley, supra*, 826 F.2d at 674), for the Board awarded Schroeder his duty disability benefits retroactive to the date of his application. No procedural right of Schroeder's was infringed. For we have just seen that he had no right to a prompter hearing than he received. Stated differently, the right to a hearing and to obtain mandamus if the hearing was unreasonably delayed gave Schroeder all the process that was due him to protect him against random and unauthorized acts of subordinate officials (Tully and Connor) aimed at depriving him of his claimed property. *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Easter House v. Felder*, 910 F.2d 1387 (7th Cir.1990) (en banc).

■ But may not Schroeder have been denied substantive due process? He ar-

gues that Tully and Connor deprived him of the prompt receipt of his benefits by refusing to submit a medical certificate to the Retirement Board. It is as if they had shot him on his way to the hearing, or as if, instead of condemning private property for a public use, which merely entitles the owner to the fair market value of the property, government officials seize private property for a private use; in that event they must restore the property or, if that is infeasible, pay full common law damages, not just fair market value. In *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 464–65 (7th Cir.1988), we suggested, without having to decide, that such a claim is properly laid under the takings clause of the Fifth Amendment, which has been held applicable to state action through the due process clause of the Fourteenth Amendment. It is true that the takings clause, read literally, is limited to takings for a public use, and then requires only payment of fair market value to the owner. But there is authority, noted in *Coniston*, for regarding a taking for a private use as forbidden by the takings clause altogether, in contrast to a taking for a public use, which is permitted upon condition that the owner is offered the fair market value of his property.

This interpretation of the takings clause is attractive because it helps to domesticate the concept of substantive due process, whose tendency to formlessness has been blamed for a host of usurpative decisions ranging from Dred Scott to *Lochner* and beyond. Narrowly viewed—saved from total formlessness without being completely extinguished—"substantive due process" refers to the incorporation into the due process clause of rights found elsewhere in the Constitution. The principal example is the incorporation of most of the Bill of Rights into the due process clause of the Fourteenth Amendment, making them rights against state as well as federal action. A slightly more esoteric example is the incorporation of the equal protection clause of the Fourteenth Amendment into the due process clause of the Fifth Amendment, first done in *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), which forbade the federal government to discriminate against black people. The example in the preceding paragraph was of the incorporation of the takings clause of the Fifth Amendment, broadly construed to bar takings for other than a public use. *Chicago, Burlington & Quincy R.R. v. City of Chicago*, 166 U.S. 226, 239, 17 S.Ct. 581, 585, 41 L.Ed. 979 (1897); *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984). A controversial example is the incorporation into the due process clause of both the Fifth and Fourteenth Amendments, beginning in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), of a right of sexual and reproductive freedom founded on values believed to inform several of the amendments that compose the Bill of Rights, especially the Fourth Amendment. The Court's preference for tethering substantive due process claims to specific provisions in the Bill of Rights is illustrated by its recent decision that complaints about excessive force in arrests are to be judged by the standards of the Fourth Amendment, not by some free-wheeling concept of outrageous governmental conduct. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

We doubt there is more to substantive due process than these examples. We do not consider it a blanket protection against unjustifiable interferences with property. That way *Lochner* lies. So even if Schroeder had an entitlement to immediate receipt of his disability benefit—which he did not—and even though Tully and Connor (if the complaint is true) interfered with that hypothetical entitlement, we do not think they violated Schroeder's constitutional rights. There is no suggestion that what they did could be fitted within the boundaries of the takings clause, even broadly construed. We add the practical consideration that Schroeder did not need the aid of a federal court to protect him against Tully's and Connor's scheming. He could have asked for a hearing before the Retirement Board earlier, pointing out to them that he had no other source of support and

that the Board should not (as in the end it did not) await the certificate from the fire department before acting on his application. And if he got no satisfaction he could seek mandamus. His state remedies were adequate. There is no need to invent a constitutional one.

■ Schroeder presses another claim, that Chicago violated the Rehabilitation Act of 1973, 29 U.S.C. § 794, which makes it unlawful for any "program or activity" receiving federal financial assistance to discriminate against the handicapped. The statute, as amended in 1988, defines program or activity to mean "all the operations" of a department, agency, district, or other instrumentality of state or local government that receives or dispenses federal financial assistance. The statute was intended to overrule *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), so that the various civil rights statutes including the Rehabilitation Act would apply to the entirety of any state or local institution that had a program or activity funded by the federal government. So "program or activity" was expanded from a specific program or specific activity to "all the operations" of the university or hospital or other institution that conducted the program or activity. S.Rep. No. 64, 100th Cong., 2d Sess. 16 (1988), U.S. Code Cong. & Admin. News 1988, 3, 18 ("If federal health assistance is extended to a part of a state health department, the entire health department would be covered in all of its operations. If the office of a mayor receives federal financial assistance and distributes it to local departments or agencies, all of the operations of the mayor's office are covered along with the departments or agencies which actually get the aid"). But the amendment was not, so far as we are able to determine—there are no cases on the question—intended to sweep in the whole state or local government, so that if two little crannies (the personnel and medical departments) of one city agency (the fire department) discriminate, the entire city government is in jeopardy of losing its federal financial assistance. We therefore need not decide whether, if Schroeder had a claim under the

Rehabilitation Act, he could obtain damages, as he seeks to do in this suit. 29 U.S.C. § 794a(a)(2); *Guardians Ass'n v. Civil Service Comm'n*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983) (plurality opinion); *Drayden v. Needville Independent School District*, 642 F.2d 129, 133 (5th Cir.1981).

Affirmed.

RIPPLE, Circuit Judge, concurring.

This case requires us to review the district court's dismissal of the plaintiff's case on the ground that the complaint did not state a claim upon which relief could be granted. *See* Fed.R.Civ.P. 12(b)(6). In reviewing such a dismissal, we are obliged to accept the allegations in the complaint as true. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Here, put quite simply, Mr. Schroeder alleges that the individual defendants willfully withheld a medical certification from the Retirement Board and thus delayed the commencement of the retirement benefits to which, under the law of Illinois, Mr. Schroeder was entitled. Consequently, Mr. Schroeder alleges that he suffered significant economic, physical, and emotional deprivation for which he remains uncompensated despite the later award of retirement benefits retroactive to the date of application.

I cannot agree that the complaint does not allege adequately the deprivation of a cognizable property right. The Illinois statutory scheme, when read as a whole, clearly contemplates that, if a firefighter is separated from the service due to injury, he may apply for retirement benefits in order to ensure that misfortune in the line of duty is not compounded by economic ruin. Here, the enjoyment of these benefits, vested by law, was postponed—according to the complaint—not by the normal delay of bureaucratic processing but by the willful sabotage of that process by government officials. Whatever the time frame contemplated for the processing of the application by the statutory scheme, it certainly does not include an expectation of a delay caused by such interference.

It does appear, however, that Mr. Schroeder was not without an adequate remedy under state law in the form of mandamus. That remedy afforded Mr. Schroeder an adequate remedy against the random and unauthorized acts of the individual defendants. *See Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Easter House v. Felder,* 910 F.2d 1387 (7th Cir.1990) (en banc). Accordingly, he cannot maintain an action for the deprivation of his right to due process of law under the federal constitution. On this basis, I join the judgment of the court.