Irene **BENTLEY,** as personal representative of Bert G. Bentley, deceased, Plaintiff–Appellee, Cross–Appellant,

v.

The **CLEVELAND COUNTY BOARD OF COUNTY COMMISSIONERS,** on behalf of Cleveland County; Jan Collins, individually and in the official capacity as Cleveland County Commissioner, District No. 1, Defendants–Appellants, Cross–Appellees.

Nos. 93–6328, 93–6345.

United States Court of Appeals, Tenth Circuit.

Nov. 29, 1994.

Andrew W. Lester (Alison J. Widdoes, with him on the brief) of Lester, Bryant, Solano, Pilgrim & Ganz, P.C., Oklahoma

City, OK, for defendants-appellants/cross-appellees.

Mark Hammons of Hammons & Associates, Inc., Oklahoma City, OK, for plaintiff-appellee/cross-appellant.

Before BRORBY, Circuit Judge, SETH and LAY,[1] Senior Circuit Judges.

LAY, Senior Circuit Judge.

## BACKGROUND

Bert Bentley filed suit against the Cleveland County Board of County Commissioners[2] and County Commissioner Jan Collins, individually and in her official capacity, alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (Supp.1993), and the Oklahoma Anti-discrimination Act, Okla.Stat. tit. 25, § 1302 (Supp.1994). Bentley died of cancer before trial, and his wife, Irene, was substituted as plaintiff in this action. After trial, the jury returned a verdict for the defendants on the federal claims, but returned a verdict for Bentley in the amount of $157,000 on the state law claims. The district court entered judgment on the verdict. This appeal followed. We affirm.

On appeal, the County[3] first urges the court lacks subject matter jurisdiction because Cleveland County is not a recipient of federal funds and thus is not subject to the requirements of the Rehabilitation Act. In addition, the County claims the Oklahoma Governmental Tort Claims Act limits its liability in this action to $100,000 and precludes a judgment against both the Board of County Commissioners and Jan Collins individually. The County also assigns error to one of the district court's jury instructions and several of its evidentiary rulings.[4]

Bert Bentley was hired by Cleveland County in late 1987 as a mechanic in the Equipment Maintenance Division, which is charged with the upkeep of county machinery such as motor graders, dirt work equipment, and recycling equipment. Shortly after becoming county commissioner, Jan Collins decided that budget cutbacks forced her to lay off several employees. Irene Bentley claims her husband was laid off rather than less competent employees because of a previous heart attack and his supervisor's fear that if he suffered another heart attack, it would cost Cleveland County more money.

## JURISDICTION

Section 504 of the Rehabilitation Act of 1973 prohibits discrimination against disabled persons in "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (Supp.1993). The County concedes that Bentley's heart condition made him a disabled person as defined by the Act. It contends, however, it is not a recipient of federal funds and thus cannot be a covered "program or activity" under § 504. The County urges that because it is not a program or activity subject to the requirements of the Rehabilitation Act, the district court erroneously entertained subject matter jurisdiction over Bentley's federal claim as well as supplemental jurisdiction over his state claim.

It is undisputed that in 1989, the Cleveland County Board of County Commissioners entered into an agreement with the Oklahoma State Department of Transportation pursuant to which the Department agreed to recommend Cleveland County to receive federal funds under the Federal Bridge Replacement and Rehabilitation Program. The funds were to be expended for bridge replacement and repair work in the county; eighty percent of the cost was to be covered by the federal government and the remaining twenty percent by local sources. Each of the three county commissioners signed the

---

1. Honorable Donald P. Lay, Senior Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

2. An Oklahoma statute requires that any suit against a county be filed against the Board of County Commissioners for that county. Okla. Stat. tit. 19, § 4 (1988).

3. Unless otherwise noted, any reference in this opinion to the "County" is a general reference to all of the defendants in this action.

4. The County also claims for the first time on appeal that civil rights claims do not survive the injured party's death under Oklahoma law and that Bentley's claim thus expired at his death. We decline to address this argument because it was not raised in the district court.

agreement. Cleveland County obtained and expended the federal funds as agreed over a period of years, including over $90,000 in fiscal year 1991, the year in which Bentley was discharged. The County urges, nonetheless, that it is not a covered "program or activity" because Congress did not intend entire county governments to be programs or activities as defined in the Act, and because it received the funds indirectly from the State Department of Transportation. We find both arguments unpersuasive.

When Congress passed the Civil Rights Restoration Act of 1987 ("Restoration Act"), it amended the Rehabilitation Act by adding the following language:

> For purposes of this section, the term "program or activity" means all of the operations of—(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government. . . .

29 U.S.C. § 794(b)(1) (Supp.1993).

The County recognizes the Restoration Act was intended to overrule *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), and broaden the coverage of the Rehabilitation Act, but claims Congress did not intend to extend the definition to entire units of state or local government. It relies on a Seventh Circuit case that held the amendment added in the Restoration Act "was not . . . intended to sweep in the whole state or local government." *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir.1991). That case is distinguishable. In *Schroeder*, the plaintiff claimed he had been discriminated against in violation of the Rehabilitation Act by the city fire department and sued the City of Chicago. The Seventh Circuit expressed concern that

based on the discriminatory activity of "two little crannies . . . of one city agency," the entire city government risked losing its federal funding. *Id.* at 962. In this case, the parties Bentley sued, the Board of County Commissioners and Jan Collins, are the very parties he claims discriminated against him.

Moreover, when a sub-unit of a local government discriminates against one of its employees, the employee might naturally name the local government as defendant. That practice should not dictate whether the employee may bring suit under the Rehabilitation Act. Rather, the inquiry should focus on whether there is a sufficient nexus between the federal funds and the discriminatory practice as outlined in the Restoration Act and its legislative history. We cannot conclude that Bentley's claim fails merely because he has sued a county government.[5]

■ The County next argues that even if a county government may be a covered "program or activity" as contemplated by the Act, Cleveland County is not covered because it was not a direct recipient of federal funds. The legislative history of the Restoration Act refutes this contention. It explains how the amendment affects the coverage of state and local governments:

A. State and Local Governments.

The bill provides that when any part of a state or local government department or agency is extended federal financial assistance, the entire agency or department is covered. If a unit of a state or local government is extended federal aid and distributes such aid to another governmental entity, *all of the operations of the entity which distributes the funds and all of the operations of the department or agency to which the funds are distributed are covered.*

Examples: If federal health assistance is extended to a part of a state health depart-

---

**5.** We note as further evidence Congress did not intend to exclude all city and county governments from the Act's coverage, that the legislative history discusses several cases, among them one against the City of Chicago, and one against Los Angeles County. *See* S.Rep. No. 64, 100th Cong., 2d Sess. 14–17 (1987), *reprinted in* 1988 U.S.C.C.A.N. 16–18. Nothing in the history indicates disapproval of these suits filed against city and county governments; rather they are lamented as "casualties" of *Grove City*.

ment, the entire health department would be covered in all of its operations.

If the office of a mayor receives federal financial assistance and distributes it to local departments or agencies, all of the operations of the mayor's office are covered along with the departments or agencies which actually get the aid.

S.Rep. No. 64, 100th Cong., 2d Sess. 16 (1987), *reprinted in* 1988 U.S.C.C.A.N. 18. (emphasis added). The County relies on *United States Dep't of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 607, 106 S.Ct. 2705, 2711–12, 91 L.Ed.2d 494 (1986), in urging that only direct recipients of federal assistance are covered. We note that *Paralyzed Veterans* was decided before the Restoration Act became law. Even assuming *Paralyzed Veterans* survived the legislative change, the Court's reasoning in that case does not favor the County's position. The Court did not hold that only direct recipients of federal funds were covered programs or activities, but rather made a distinction between recipients of federal funds and mere beneficiaries. The Court acknowledged that "coverage extends to Congress' intended recipient, *whether receiving the aid directly or indirectly.*" *Id.* at 607, 106 S.Ct. at 2712 (emphasis added).

Further, the Court in *Paralyzed Veterans* expressed its concern that coverage of the federal civil rights laws would be extended to those that were not in a position "to accept or reject those obligations as a part of the decision whether or not to 'receive' federal funds." *Id.* at 606, 106 S.Ct. at 2711. In this case, each of the commissioners on the Cleveland County Board of County Commissioners signed an agreement with the Oklahoma Department of Transportation that expressly sought federal funds. Thus, the Board knowingly requested and accepted federal funds and cannot avoid the accompanying obligation to comply with federal civil rights laws. On that basis, we find the trial court properly exercised subject matter jurisdiction over this case.

## DAMAGE CAP

■ The County next urges the district court erred in failing to apply the Oklahoma Governmental Tort Claims Act ("GTCA") to this action. Okla.Stat. tit. 51, §§ 151–171 (1988). The GTCA immunizes the state and its political subdivisions from suit in certain instances and limits the liability of the state or any political subdivision of the state to $100,000 for claims within its scope arising from any single accident or occurrence. Okla.Stat. tit. 51, § 154(A)(2) (1988).[6]

The County does not contend it is immune from suit under the terms of the GTCA, but claims the $100,000 damage cap should have been enforced. The County first raised this issue in its Motion to Alter or Amend Judgment. Failure to plead an affirmative defense results in a waiver of that defense. Fed.R.Civ.P. 8(c); 2A James W. Moore et al., Moore's Federal Practice ¶ 8.27(3) (2d ed. 1994). The County contends the immunity granted by the GTCA is not an affirmative defense, but rather it is sovereign immunity, a jurisdictional matter that can be raised at any time. We disagree. What is at issue here is not sovereign immunity, but a statutory limit on liability. Moreover, this Court has long held that both qualified and absolute immunity are affirmative defenses that must be pleaded. *See, e.g., Quezada v. County of Bernalillo*, 944 F.2d 710, 718 (10th Cir.1991); *Wolfenbarger v. Williams*, 826 F.2d 930, 932 (10th Cir.1987); *Morgan v. Willingham*, 424 F.2d 200, 202 (10th Cir.1970). Other circuits have held the same. *See, e.g., Kennedy v. City of Cleveland*, 797 F.2d 297, 300 (6th Cir.1986) ("[I]mmunity, whether qualified or absolute, is an affirmative defense which

---

**6.** The County also argues the lower court erred in permitting the jury to find the Board of County Commissioners and Jan Collins jointly and severally liable because under the GTCA both parties cannot be liable. The crux of the County's argument is that the GTCA provides that the local government is liable for acts of its employees within the scope of their employment, and it prohibits government liability when an employee acts outside the scope of his or her employment. Okla.Stat. tit. 51, § 153(A) (1988). Thus, under the GTCA, if Jan Collins were individually liable, Cleveland County could not be liable, and vice versa. We need not consider this issue because the County agreed to a jury instruction that submitted the liability of Collins and the Board as joint and several tortfeasors. We deem the issue waived. A party cannot complain on appeal of an error that has been invited. *Neu v. Grant*, 548 F.2d 281, 287 (10th Cir.1977).

must be affirmatively pleaded ....”), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); *Jakobsen v. Massachusetts Port Auth.,* 520 F.2d 810, 813–16 (1st Cir.1975) (waiving statutory limit on port authority's liability).

Permitting the County to raise this issue at this stage of the proceedings would be extremely unfair to Bentley, who may have been able to prove some exception to the damage cap at trial if he had notice of the defense. Thus, assuming the GTCA applied to this action, counsel for the County waived any limit on its liability afforded by that statute by failing to raise the issue in its answer, the Pre–Trial Order, or at trial.

## JURY INSTRUCTIONS

The County urges under the Oklahoma Anti-discrimination Act the district court should have used the “sole factor” test, the same standard of proof found in the federal Rehabilitation Act.[7] Under the federal act, the plaintiff must show the employment discrimination occurred “solely by reason of her or his disability.” 29 U.S.C. § 794(a) (Supp. 1993).

At trial, counsel for the County agreed with the trial court that the proper instruction on the state claim should incorporate the terms of the Oklahoma statute and require the plaintiff prove he was discharged *because of* his physical impairment. Okla.Stat. tit. 25, § 1302 (Supp.1994). The County preferred that the court include only that statutory language without elaboration. In the alternative, the County requested that if the court attempted to clarify the terms of the statute, it apply the sole factor test. We assume the County believed the terms “because of” and sole factor expressed the same standard. If counsel for the County thought the two standards were different, we think it clear the County may not make inconsistent requests and urge error on appeal because the court gave one instruction and not the other. The court used the “because of” standard in the instruction, and counsel for the County stated it was “the standard the defendant would wish to urge.” The County's objection must

then focus on the additional language which the court used to clarify the meaning of the “because of” standard to the jury. We find the court was not in error in clarifying the meaning of the standard in the manner in which it did. The court is not limited solely to the statutory language and may give further aid to the jury by way of defining terms under Oklahoma law.

Moreover, the district court did not err in refusing to instruct the jury that the “because of” language in the statute called for a sole factor test. That would have been error under Oklahoma law and federal law as well. The meaning of the state statute, of course, is controlled by Oklahoma law. The County urges the legislature intended to adopt the sole factor standard of the federal Rehabilitation Act. It claims the legislature made this clear in the preamble to the Oklahoma statute by stating:

> The general purposes of this act are to provide for execution within the state of the policies embodied in ... Section 504 of the federal Rehabilitation Act of 1973 to make uniform the law of those states which enact this act....

Okla.Stat. tit. 25, § 1101(A) (Supp.1994).

■ There is no question the state legislature sought to adopt the same policies intended under the Rehabilitation Act in preventing discrimination in the work place. However, under Oklahoma law, the legislative intent must be ascertained from the language of the pertinent statute. *Tate v. Browning–Ferris, Inc.,* 833 P.2d 1218, 1228 (Okla.1992); *Hess v. Excise Bd. of McCurtain County,* 698 P.2d 930, 932 (Okla.1985).

■ The Oklahoma legislature in passing its employment discrimination statute did not utilize the same language as the federal Rehabilitation Act. If the Oklahoma legislature wanted to adopt the federal standard it could have easily done so by adding the word “solely” to the statute. It did not do so.

In addition, the Supreme Court of Oklahoma has interpreted the words “because of”

---

7. In determining whether the district court properly instructed the jury, we must consider whether the instructions accurately reflect the govern-

ing law and give the jury an adequate understanding of the issues. *White v. American Airlines, Inc.,* 915 F.2d 1414, 1420 (10th Cir.1990).

in a state statute governing retaliatory discharge under the Workmen's Compensation Act. Okla.Stat. tit. 85, § 5 (1992). In doing so it has expressly rejected the sole factor test. The Oklahoma Supreme Court has observed:

> The statute creating the cause of action for retaliatory discharge, 85 O.S.1981 § 5, provides that an employee may not be discharged *because* of the exercise of rights under the Workers' Compensation Act. If retaliation plays a significant part in an employer's decision to place an employee among a list of those to be laid off for economic reasons, that employee has been discharged because of the exercise of rights granted under statute. We hold that when retaliatory motivations comprise *a significant factor* in an employer's decision to terminate an employee, even though other legitimate reasons exist to justify the termination, the discharge violates the intent of section 5.

*Thompson v. Medley Material Handling, Inc.*, 732 P.2d 461, 463 (Okla.1987) (second emphasis added).

Thus, under Oklahoma law, the Anti-discrimination statute did not call for a sole factor test. In the present case, the trial court instructed the jury that the County was liable under the state statute if Bentley's disability "actually made a difference in the decision to terminate him." In federal parlance this is a restatement of the "determining factor" or "but for" standard.[8] It clearly is not a sole factor test. *Cf. Golomb v. Prudential Ins. Co. of America*, 688 F.2d 547, 550–51 (7th Cir.1982).

Because we find the sole factor test was not applicable, we need not decide whether the "determining factor" test is the proper standard. It is clear this standard was not prejudicial to the County. Under Oklahoma law, the "determining factor" test is a more stringent test than the "significant factor" test Bentley urged. *See Elzey v. Forrest*, 739 P.2d 999, 1001 (Okla.1987). We therefore find the trial court's instructions were not prejudicial to the County.

## EVIDENTIARY ISSUES

The County claims the district court abused its discretion in failing to permit it to present evidence that many of Bentley's medical bills were paid by a third party, the Oklahoma Department of Human Services.[9] The essence of the County's argument on appeal is that under the GTCA only the "real party in interest" may bring suit. Because the Department of Human Services paid the bills, the County claims the Department is the real party in interest. The County did not raise this particular argument below, but urged the introduction of the evidence on other grounds. Thus, the County has waived this legal theory on appeal. *Schepp v. Fremont County*, 900 F.2d 1448, 1454 n. 7 (10th Cir.1990).

■ The County next claims the district court abused its discretion in failing to admit into evidence a portion of Mr. Bentley's job application in which he stated he did not have any disabilities. The County sought the introduction of this evidence to show Jan Collins was not aware of Bentley's disability. The trial court excluded the evidence on the grounds that it might confuse the jury be-

---

8. Title VII uses the same language ("because of") the Oklahoma legislature does in the Anti-discrimination statute. Section 703(a), 42 U.S.C. § 2000e–2(a) (1988), describes what conduct is unlawful:

> Employer practices
> It shall be an unlawful employment practice for an employer—
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way

which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, *because of* such individual's race, color, religion, sex, or national origin.
(emphasis added).
Under this statute, a plaintiff must show the discriminatory reason was a "but for" cause. This is not a sole factor test. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282 n. 10, 96 S.Ct. 2574, 2580 n. 10, 49 L.Ed.2d 493 (1975).

9. We will not disturb a trial court's ruling on an evidentiary matter unless there has been a clear abuse of discretion. *Polys v. Trans–Colorado Airlines, Inc.*, 941 F.2d 1404, 1407 (10th Cir.1991).

cause whether Bentley believed he was disabled was irrelevant to determining whether he was actually covered by federal and state laws protecting disabled individuals. We can find no abuse of discretion in that ruling.

■ Finally, the County claims one of the exhibits Bentley displayed during closing argument was unduly prejudicial. If Bentley had not been terminated, his family would have collected on a life insurance policy provided by his employer. The trial court ruled the jury could consider the amount of Bentley's life insurance in determining what to award for emotional distress, but could not directly compensate him for the loss of the policy. Because the display used by Bentley in closing argument listed the life insurance policy and its dollar amount, the County claims the jury impermissibly awarded Bentley the amount of the policy. We find no abuse of discretion in the trial court's decision to permit the exhibit; the court adequately instructed the jury on how to use the insurance policy in figuring Bentley's damages.

Having considered each of the County's assignments of error, we conclude the trial court properly exercised subject matter jurisdiction over this action and committed no reversible error. Accordingly, we AFFIRM.