**Sheena HODGES, et al., Plaintiffs,**

v.

**PUBLIC BUILDING COMMISSION OF CHICAGO, Chicago Board of Education, and the City of Chicago, Defendants.**

**CHICAGO BOARD OF EDUCATION, Defendant/Cross Plaintiff**

v.

**PUBLIC BUILDING COMMISSION OF CHICAGO, Defendant/Cross Defendant.**

No. 93–C–4328.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 14, 1995.

---

Patricia Mendoza, City of Chicago Bd. of Educ., Harvey Michael Grossman, Rocio de-Lourdes Cordoba, Roger Baldwin Foundation of ACLU, Inc., Chicago, IL, for Amari Mitchell, Ninette Boonstra, Carrie Boonstra, Jeremy Bartel.

Patricia Mendoza, City of Chicago Bd. of Educ., Colleen K. Connell, Harvey Michael Grossman, Rocio deLourdes Cordoba, Roger Baldwin Foundation of ACLU, Inc., Harold C. Hirshman, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Nikishia Hunter, DeDe Atiogbe, Kwame Atiogbe, Jaime Duran, Sheena Hodges and Edgardo Duran.

Patricia Mendoza, City of Chicago Bd. of Educ., Colleen K. Connell, Harvey Michael Grossman, Rocio deLourdes Cordoba, Roger Baldwin Foundation of ACLU, Inc., Chicago, IL, for Teteh Atiogbe.

Javier H. Rubinstein, James D. Holzhauer, Timothy Simon Bishop, Mayer, Brown & Platt, Richard Freund Friedman, Earl L. Neal, Langdon David Neal, Earl L. Neal & Associates, Chicago, IL for Public Bldg. Com'n of Chicago.

Pamela Elana Cash, Miguel Angel Rodriguez, Michael Joseph Hernandez, City of Chicago Bd. of Educ., Iris Ellen Sholder, Jones, Ware & Grenard, Chicago, IL, for Chicago Bd. of Educ.

Susan S. Sher, Susan R. Lichtenstein, Laure Ann Mullaney, Andrew S. Mine, City of Chicago, Law Dept. Corp. Counsel, Chicago, IL for City of Chicago.

James J. Casey, Dennis J. Powers, Jeffrey A. Roth, Keck, Mahin & Cate, Chicago, IL, for Virginia Rugai.

## *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

 Plaintiffs ask this Court to reconsider[1] its dismissal of their Title VI claims against the City of Chicago ("City") and

---

**1.** Plaintiffs bring this Motion to Reconsider pursuant to Federal Rule of Civil Procedure 54(b).

grant them leave to file a Third Amended Complaint containing such claims, as well as a refined version of their Title VI claim against the Chicago Board of Education ("CBOE").[2] In support of their Motion, plaintiffs claim that they have "ascertained how the City—through its federally funded [Chicago] Department of Planning and Development ("CDPD")—discriminated against plaintiffs in violation of Title VI and its implementing regulations." (Pls. Mem. at 1). Plaintiffs then contend that the City is a proper Title VI defendant, because "the City receives federal financial assistance that it channels to the CDPD, a municipal department that played a pivotal role in the discrimination suffered by plaintiffs." (Pls. Mem. at 15). However, because the Department of Planning and Development cannot be sued,[3] plaintiffs claim that their Title VI action "lies only against the City." (*Id.*).

In support of these claims, plaintiffs refer this Court to the Civil Rights Restoration Act of 1987 ("CRRA"), which amended Title VI's definition of a "program or activity receiving Federal financial assistance," 42 U.S.C. § 2000d, to include:

all of the operations of (1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government ... any part of which is extended Federal financial assistance.

42 U.S.C. § 2000d–4a. According to plaintiffs, the City, as a recipient of federal funds, is a proper Title VI defendant for six reasons: (1) any city receiving federal funds "has an obligation to ensure that its programs and activities—here the CDPD—do not discriminate in any of their operations." *See United States Department of Transportation v. Paralyzed Veterans of America,* 477 U.S. 597, 604, 106 S.Ct. 2705, 2710, 91 L.Ed.2d 494 (1986); *Doe v. City of Chicago,* 1994 WL 691644 (N.D.Ill. Dec. 1, 1994) (unpublished decision) (CRRA "does not alter or overrule" the Supreme Court ruling in the case of *Paralyzed Veterans* ); (2) as a recipient of federal funds "used in the operations of the [CDPD] the City may be held liable under Title VI for the discrimination caused by the conduct of its federally funded municipal department"; (3) "[t]he statutory language of Title VI does not limit enforcement of its antidiscrimination mandate to only those recipients that are themselves 'programs or activities' "; (4) "all recipients of federal grants administered by HUD ... have a contractual obligation to comply with the antidiscrimination mandate in the [Title VI] Regulations." *See* 24 C.F.R. § 1.5(a)(1); *Paralyzed Veterans,* 477 U.S. at 605, 106 S.Ct. at 2710; (5) after CRRA, Title VI provides that the termination of federal funds will be limited to the particular program which is liable for discrimination. *See* 42 U.S.C. § 2000d–1 (Supp.1994). "This program-specific remedy" directly addresses and eliminates the danger feared by this Court [in its September 14, 1994, Memorandum Opinion] and the Seventh Circuit [in *Schroeder v. City of Chicago,* 927 F.2d 957, 962 (7th Cir.1991) ] that discrimination in the conduct of one program of one agency of a city could result in an entire city government losing its federal financial assistance. *See* Memorandum Opinion at 24 (quoting *Schroe-*

---

2. Plaintiffs briefly assert that they have "more clearly delineate[d] their Title VI regulatory claims against the Chicago Board of Education in accordance with this Court's suggestion in its September 14, 1994, Memorandum Opinion and Order at 20 n. 5 ("Mem. Op.") 864 F.Supp. 1493," and request leave to "refine" their claim against the CBOE in the Third Amended Complaint. The Court would be willing to permit this "refinement" as indicated in the September 14, 1994, Memorandum Opinion if the Third Amended Complaint had been filed "within fourteen days," as indicated. (Mem. Op. at 20 n. 5). However, plaintiffs waited until December 1, 1994, to file their Third Amended Complaint containing this "refinement"—well past the deadline set by the Court and after the trial date had been set and reset. The Court believes it would be prejudicial to allow amendment at this stage of the proceedings.

3. Under Federal Rule of Civil Procedure 17(b), the capacity of an entity to be sued is governed by the law of the state in which the district court is located. According to plaintiffs, most municipal departments in Illinois do not have the capacity to be sued. The Department of Planning and Development is a nonsuable entity, because the municipal code does not given the Department the power to enter into contracts, sue or be sued. Mun.Code Title 22 § 76–225; 65 ILCS 5/11–12–4. *Compare* 50 ILCS 20/14 (establishing the Public Building Commission and conferring the power to sue and be sued).

*der* ); and (6) the City of Chicago must be a proper Title VI defendant or there are no viable Title VI defendants to answer for discrimination committed under municipal programs and activities.

The Court denies Plaintiff's request for leave to file a Third Amended Complaint, naming the City as a Title VI defendant, for the following reasons:

1. On September 14, 1994,[4] the Court issued a Memorandum Opinion and Order dismissing plaintiffs' Title VI claim against the City of Chicago because "the City ... is not within the scope of Title VI's coverage," despite the CRRA's expansion of the term "program or activity" in Title VI, 42 U.S.C. § 2000d (Supp.1994). The Court found that,

> [t]he City is not an "operation" of "a department, agency, special purpose district, or other instrumentality of a State or of a local government," or of "the entity of such State or local government that distributes such assistance," or of any of the other entities enumerated in § 2000d–4a. Rather, the City is a municipality and, as such, it does not fit within the definition of "program or activity" for purposes of Title VI.

(Mem. Op. at 23). This ruling was based on the reasoning articulated by Judge Bua in *Schroeder v. City of Chicago*, 715 F.Supp. 222 (N.D.Ill.1989) ("Schroeder I"), and the Seventh Circuit's affirmance of *Schroeder I*, in *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir.1991) ("Schroeder II").

2. In *Schroeder I*, the Court found that Section 504(b)(1)(A) of the Rehabilitation Act defines a "program or activity" receiving federal financial assistance as the operations of "a department, agency, special purpose district, or other instrumentality of a State or of a local government." Applying this definition, Judge Bua found that the City of Chicago, which was being sued for discrimination by the Chicago Fire Department, was not a proper defendant because the City, itself, is the local government, rather than a department or instrumentality of a local government. Consequently, the Court found that the City did not fit the statutory definition of "program or activity" and therefore granted the City's motion to dismiss the Rehabilitation Act claim against it. *Schroeder II* affirmed this decision.

3. This Court found that the Rehabilitation Act "closely tracks the language of Title VI, which was its model," permitting the Court to find that, "the definition of 'program or activity' for purposes of the Rehabilitation Act is essentially identical to its definition for purposes of Title VI." (Mem. Op. at 23 n. 6).

■ 4. Given the parallel provisions of Title VI and the Rehabilitation Act, the Court concluded that Judge Bua's decision in *Schroeder I* and the Seventh Circuit's affirmance in *Schroeder II*, provided strong precedent for finding that CRRA's amendment to Title VI, like the amendment to the Rehabilitation Act, was not "intended to sweep in the whole state or local government" when a single "program or activity" or department was found to be liable for discrimination. (Mem. Op. at 24). Relying on these authorities, the Court found that "the City is not a 'program or activity' for purposes of Title VI and its regulations." (*Id.*).

5. Plaintiffs' arguments (outlined above) do not change this result.[5] After review of the cases and arguments offered by plain-

---

4. The Court's original Memorandum Opinion and Order was issued on September 1, 1994, and amended on September 14, 1994, for reasons not relevant here. The September 14, 1994, Memorandum Opinion and Order supersedes the Opinion issued on September 1, 1994.

5. For instance, plaintiffs' claim that, the "danger feared" by this Court and the Seventh Circuit in *Schroeder II* is eliminated by Title VI's provision limiting the termination of federal funds to specific programs, *see* 42 U.S.C. § 2000d–1 (Supp. 1994), is unfounded, given that plaintiffs seek to hold the *City* liable for the alleged actions of a "program or activity" like the CDPD. Further, plaintiffs' claim that there will be "no viable Title VI defendants to answer for discrimination committed under municipal programs and activities," if this Court does not permit suit against the City under Title VI, is not a concern for this Court. Plaintiffs, themselves, note that under Fed.R.Civ.P. 17(b), the capacity of an entity to be sued is governed by the law of the state in which the district court is located. The state legislature determines which municipal "program or activity" may be sued; this Court merely determines that the City of Chicago does not fit the statutory definition of "program or activity" under Title VI.

tiffs, the Court remains persuaded that *Schroeder I* and *Schroeder II* are not only the most well-reasoned authorities on the issue before us, but also the authorities we believe the Seventh Circuit will rely upon in any future decision regarding Title VI.

6. Given that the Court will not permit plaintiffs to name the City as a Title VI defendant, the issue of whether plaintiffs lack standing to allege a violation of Title VI is moot. However, even if the issue of standing was relevant at this juncture, to the extent that the Third Amended Complaint proposes to remedy the pleading defects on this issue indicated by the Court in its Memorandum Opinion (pages 24–25), the plaintiffs' "new allegations" regarding the conduct of the CDPD, even when accepted as true by this Court for purposes of ruling on the pending motion, cannot support a cause of action, because plaintiffs must be an "intended beneficiary of, an applicant for, or a participant in" the "federally funded program" which is a proper defendant under Title VI. Plaintiffs have conceded that the CDPD cannot be sued, and the Court has concluded that the City is not "vicariously" liable for the alleged actions of the CDPD under Title VI, simply because it receives and allocates federal funds.

7. Even if the analysis outlined above did not compel denial of plaintiffs' request for reconsideration and leave to file its Third Amended Complaint, the Court believes that the plaintiffs' "eleventh hour" attempt to amend its pleadings is an attempt to delay the proceedings in this case and would be prejudicial to the defendants. The Court indicated that it would accept a Third Amended Complaint related to the involvement of the Chicago Board of Education under Title VI within fourteen (14) days after the issuance of its September 14, 1994, Memorandum Opinion. (Mem. Op. at 20 n. 5). The plaintiffs' attempt to file a Third Amend-

ed Complaint on December 1, 1994, is not only well past that deadline, but also was filed after the Court set and reset a trial date. The Court has reset the trial date twice, only upon the joint request of the parties. The Court will not now grant leave to file this Complaint, not only for the substantive reasons expressed above, but also because an amendment at this late date would further delay the proceedings and, ultimately, the trial—a result this Court has clearly indicated that it will not allow.

For these reasons, the Court denies plaintiffs' Motion for Leave to Amend the Complaint and for reconsideration pursuant to Fed.R.Civ.P. 54(b) (Doc. # 186).[6]

---

6. This Memorandum Opinion does not address Plaintiffs' pending Motion for Discovery Sanctions. However, even if the Court were to award sanctions based on Plaintiffs' allegation that the City receives millions of dollars through the CDB grant process, the relief sought would not change the Court's analysis regarding Plaintiffs' Motion to Amend the Complaint. The issue under Title

VI is not whether the City receives federal funds; the issue is whether the City is "within the scope of Title VI's coverage" after *Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir.1991). The Court has determined that the City falls outside the scope of Title VI under *Schroeder*, and evidence that the City receives federal funds would not change this result.