In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-3332

GARY CLEVEN,

*Plaintiff-Appellant,*

*v.*

PAUL R. SOGLIN, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:16-cv-00421-wmc — **William M. Conley**, *Judge.*

ARGUED APRIL 11, 2018 — DECIDED SEPTEMBER 10, 2018

Before BAUER, SYKES, and BARRETT, *Circuit Judges.*

BARRETT, *Circuit Judge.* Gary Cleven, a stagehand for the City of Madison, Wisconsin, has been in a long-running dispute with the City about his participation in the Wisconsin Retirement System. At the outset of his employment with the City, it erroneously characterized him as an independent contractor ineligible for retirement benefits. When that mistake was rectified twenty years later, the City delayed reporting his backdated hours and wages to the Wisconsin Retire-

ment System because of a subsidiary dispute about who was responsible for paying Cleven's overdue employee contribution to the fund. Cleven argues that this delay effectively deprived him of five years of retirement without due process of law.

Even assuming that the City's delay deprived Cleven of a property right, he was not denied due process. According to Cleven's account, the City disobeyed an order from a state entity when it failed to immediately report his hours and wages to the Wisconsin Retirement System. But if the City deviated from the procedure that state law required it to follow, Cleven's right to obtain a writ of mandamus was an adequate remedy. We therefore affirm the district court's grant of summary judgment to the City.

## I.

Gary Cleven began working as a stagehand for the City of Madison, Wisconsin in the early 1980s. When Cleven began his employment, the City classified him as an independent contractor. Because only employees are eligible to participate in the Wisconsin Retirement System, the City did not enroll him in it. But twenty years later, it turned out that Cleven had been misclassified—he had been an employee all along. That determination led to a messy dispute with the City about the terms of Cleven's participation in the Wisconsin Retirement System.

A union that represented various theatrical employees prompted the change in Cleven's classification.[1] In 2006, the

---

[1] The union was the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States, its Territories and Canada, Local 251.

union petitioned the Wisconsin Employment Relations Commission for an election to determine whether stagehands working for the City wished to be represented for purposes of collective bargaining. The City opposed the petition, arguing that the stagehands were independent contractors, not employees. The Commission sided with the union and granted the petition for an election. The stagehands voted to be represented by the union, the union bargained with the City on the stagehands' behalf, and the City agreed to review the stagehands' hours to determine whether they qualified for enrollment in the Wisconsin Retirement System. (The City determined that Cleven qualified as of December 27, 2009.) In addition, the City agreed to pay the stagehands' share of the required contribution to the Wisconsin Retirement System starting on January 1, 2010. But those commitments were forward-looking. The City reached no agreement with the union about whether it would backdate the stagehands' hours and earnings for the period before the effective date of the labor agreement.

Cleven took that question to the Employee Trust Funds Board, the state entity designated to hear appeals from employer determinations of eligibility for the Wisconsin Retirement System. He asked the Board to order the City to retroactively credit his hours and earnings for the period between January 1, 1983 and December 27, 2009; he also asked it to require the City to pay his share of the past-due mandatory contribution. Because Cleven had never paid into the system, his overdue share was substantial—roughly $200,000. In March 2013, the Board gave Cleven half of what he wanted: it concluded that he had become eligible to enroll in the Wisconsin Retirement System on January 1, 1983, but it declined to decide who was responsible for paying the

past-due employee contribution. It said that the City had no statutory obligation to pay and that the Board had no authority to determine whether equitable principles required the City to do so.

Cleven sought review of the Board's decision in a state court, which dismissed the appeal on procedural grounds. Cleven appealed the dismissal, the Wisconsin Court of Appeals affirmed it, and the Wisconsin Supreme Court denied his petition for review. By the time Cleven completed his run through the state court system, it was May 2015.

While Cleven's appeal was pending in the state courts, the City stalled. Although the Board had not decided whether the City had to pay Cleven's employee contribution, it had ordered the City to report Cleven's hours and earnings between 1983 and 2010—the period in which he was eligible for but not enrolled in the Wisconsin Retirement System. But the City didn't do it. As soon as it reported Cleven's hours to the Wisconsin Retirement System, the City would receive an invoice for both the employer and employee contributions. In the normal course, the employee contribution consisted of money that the City had withheld from the employee's paychecks; in Cleven's situation, the City had never collected any money. If the City paid Cleven's share and the state court later determined that Cleven was responsible for it, the City would have to sue Cleven for reimbursement to recover the money. Rather than take that risk, the City chose to let the state court litigation play out before it reported his hours and earnings.

Less than one month after the state supreme court denied his petition for review, Cleven filed another action in state court seeking a writ of mandamus that would require the

City to report his hours and earnings since January 1, 1983 to the Wisconsin Retirement System. In April 2016, the state circuit court ordered the City to "immediately (with all reasonable dispatch) report [Cleven's hours and wages] to the [Wisconsin Retirement System] so [he] can be enrolled as a participating employee as of January 1, 1983." The City complied, and the Wisconsin Retirement System invoiced it for both the employer and employee contributions. After the City paid the bill, it joined Cleven as a third-party defendant in parallel litigation about whether the stagehands owed the past-due employee contribution. The City lost in the trial court, and its appeal of that decision is currently pending.

In June 2016, a few days after the City finally reported Cleven's hours and earnings to the Wisconsin Retirement System, Cleven sued the City and two of its employees under 42 U.S.C. § 1983, alleging that they violated his procedural due process rights under the Fourteenth Amendment. Cleven said that he had wanted to retire on December 31, 2011, but because he couldn't afford to retire until he received his pension, the City's delay in reporting his hours forced him to wait until December 31, 2016. Thus, Cleven claimed, the City had taken five years of his retirement without a predeprivation hearing about whether it was entitled to "tak[e his] retirement benefits hostage" until the state decided who had to pay the overdue employee contribution. The district court entered summary judgment for the City, holding that Cleven's ability to seek a writ of mandamus was adequate postdeprivation process.

## II.

To establish a procedural due process violation, Cleven must show a deprivation of a right and a denial of due pro-

cess. *Schroeder v. City of Chicago*, 927 F.2d 957, 959 (7th Cir. 1991). Like the district court, we will assume for the sake of argument that Cleven lost a property right when his retirement was delayed. Our focus is on whether he was denied due process when the City temporarily took that right.

Cleven does not dispute that he received adequate process with respect to the fundamental issue of whether he was an "employee" entitled to participate in the Wisconsin Retirement System. When Cleven thought that he was owed retirement benefits that the City had not given him, he sought and received a hearing before the Employee Trust Funds Board. That proceeding was successful; the Board ordered the City to report his hours to the Wisconsin Retirement System.

Cleven complains, however, that the Due Process Clause guaranteed him a hearing before the City refused to obey the Board's order. Yet the description of his desired procedure does not include a hearing. He asserts that "[t]he appropriate procedure was for the City to report [his] hours and earnings to the [Wisconsin Retirement System] as ordered by the Board of Employee Trust Funds," pay his share, and sue him afterward to recover the money. In other words, Cleven wanted the City to follow the Board's directive. This wasn't a matter of resolving whether the City had to report his hours; the Board had already said that it did. This was a matter of forcing the City's compliance with that ruling.

The state offered him a procedure to accomplish exactly that: a writ of mandamus. Although Cleven does not say why, he let two years go by before he took advantage of that procedure. He responded to the Board's order by asking a state court to review it, and he did not seek a writ of man-

damus until that action had run its course. As we have said before, a plaintiff "simply cannot refuse to pursue the available state remedies and then come into federal court complaining that he was not afforded due process." *Kauth v. Hartford Ins. Co. of Illinois*, 852 F.2d 951, 955 (7th Cir. 1988).

Cleven says that a writ of mandamus is insufficient because he was entitled to a predeprivation remedy. He is incorrect. On Cleven's own account, the City acted without authorization when it failed to immediately comply with the state entity's directive that it report Cleven's hours and earnings to the Wisconsin Retirement System. And when Cleven finally sought a writ of mandamus, the state court agreed. When officials act without authorization, "[i]t is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place." *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Cleven argues that this principle doesn't apply because the City and its employees intentionally chose this course. But as the Supreme Court has explained, there is "no logical distinction between negligent and intentional deprivations of property insofar as the 'practicability' of affording predeprivation process is concerned." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In this situation, a meaningful postdeprivation hearing satisfies due process, *id.*, and the State provided one here. *See Schroeder*, 927 F.2d at 960 (holding that mandamus is a sufficient postdeprivation remedy for city officials' unauthorized delay of a benefits hearing); *Kauth*, 852 F.2d at 955–56 ("[I]f a state provides an adequate means of redressing a property deprivation, the victim of the deprivation has been accorded due process of law.").

\* \* \*

The judgment of the district court is AFFIRMED.